THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DOROTHY RALL and KEITH RALL,
as parents and next[1] friend, and on behalf of
their minor child, JANE DOE RALL,

      Plaintiffs,

v.                                                                No. CIV 15-0518 RB/CG

HOBBS MUNICIPAL SCHOOL DISTRICT,
a political subdivision of the State of New
Mexico, et al.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendants City of Hobbs Board of Commissioners and John Joseph Murphy's Motion to Dismiss Plaintiffs' Second Amended Complaint, and for Qualified Immunity (Doc. 31) and on Defendants Hobbs Municipal School District, TJ Parks, Shelby Reeves and Mike Smith's Motion and Memorandum to Dismiss Plaintiffs' Second Amended Complaint and for Qualified Immunity (Doc. 32). Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **GRANT IN PART** both motions to dismiss as outlined below.

## I.      Procedural Background

This case arises from Defendant Zachary White's alleged sexual abuse of Plaintiff Jane Doe Rall, a minor child, while Defendant White was either employed by or volunteered with a

---

[1] Plaintiff's complaints and submissions to Court have been captioned "Dorothy Rall and Keith Rall, as parents and best friend . . . ." The Court notes that the correct legal term of art is "next friend," which is defined as: "A person who appears in a lawsuit to act for the benefit of an incompetent or minor plaintiff, but who is not a party to the lawsuit and is not appointed as guardian." *Next friend*, <u>Black's Law Dictionary</u> (7th ed. 1999).

summer basketball camp in Hobbs. Plaintiffs allege that the other Defendants failed to appropriately hire, train, and supervise the staff and volunteers at the camp, which led to deprivations of Plaintiff Jane Doe Rall's constitutional rights.

Plaintiffs have filed three versions of their complaint. (*See* Docs. 1, 16, 25.) Two groups of Defendants[2] filed motions to dismiss after Plaintiffs filed their original complaint. (Docs. 5, 6.) Plaintiffs submitted one responsive brief in opposition to the motions to dismiss, along with a First Amended Complaint. (Docs. 16, 17.) The same two groups of Defendants filed new motions to dismiss the First Amended Complaint (Docs. 19, 21), and Plaintiffs submitted responsive briefs, together with their Second Amended Complaint (Docs. 25, 26, 27). Defendants withdrew their motions to dismiss after Plaintiffs filed each amended complaint. (Docs. 18, 20, 29.) The same Defendants have now filed new motions to dismiss based on Plaintiffs' Second Amended Complaint. (Docs. 31, 32.) Plaintiffs submitted responsive briefs without seeking leave to file a third amended complaint. (Docs. 35, 36.)

Plaintiffs allege the following counts: (1) denial of substantive due process and equal protection in violation of Plaintiff Doe's Fourteenth Amendment rights against all Defendants under 42 U.S.C. § 1983; (2) negligence against all Defendants under the New Mexico Tort Claims Act; (3) failure to warn against Defendant City of Hobbs (City); (4) failure to report against Defendant Reeves; (5) failure to train and supervise against Defendants City and Hobbs Municipal School District (HMSD); (6) negligent hiring against Defendants City and HMSD; (7) assault and battery against Defendant White and against Defendants City and HMSD under the doctrine of

---

[2] The two groups of Defendants are split between those associated with the City of Hobbs, including the City of Hobbs Board of Commissioners (City) and John Joseph Murphy (*see* Doc. 31 at 1), and those associated with the School District, including the Board of Education for the Hobbs Municipal School District (HMSD), TJ Parks, Shelby Reeves, and Mike Smith (*see* Doc. 32 at 2, 2 n.1).

respondeat superior; and (8) intentional infliction of emotional distress against all "individual" Defendants and against Defendants City and HMSD under the doctrine of respondeat superior. (*See* Doc. 25, Second Am. Compl. (SAC) ¶¶ 57–124.)

## II.     Statement of Facts

In June, 2013, Plaintiffs Dorothy and Keith Rall enrolled their fourteen-year-old daughter, Jane Doe Rall (Plaintiff Doe), in a summer basketball camp. (*Id.* at ¶¶ 20, 35.) The basketball camp is a longstanding tradition in Hobbs, a perennial basketball power house with seventeen state titles. The Hobbs High School basketball coaches allegedly use the camp to evaluate boys and girls who are interested in playing for the Junior Varsity (JV) or Varsity basketball team. (*Id.* at ¶¶ 23–24.) Plaintiff Doe was entering her freshman year of high school in the fall of 2013, and she hoped to make the girls' JV basketball team. (*Id.* at ¶ 25.)

According to Plaintiffs' allegations, the City funded and managed the basketball camp, and HMSD provided some of the camp's coaching staff and hosted the summer camp at Hobbs High School. (*Id.* at ¶¶ 8–10, 13–14, 21–22.) The City paid Defendant Reeves, who normally served as the JV basketball coach and was an employee of HMSD, to manage the 2013 summer basketball camp. (*Id.* at ¶ 26.) Defendant Reeves hired paid staff and volunteers, including coaches, referees, and other assistants, to run the camp. (*Id.* at ¶ 27.) Defendant Reeves hired Defendant White as a paid or volunteer referee. (*Id.* at ¶ 28.) Defendant White is allegedly a convicted felon on parole during the summer of 2013: "[o]n July 23, 2007, he entered a plea of no contest to the charge of trafficking a controlled substance with the intent to distribute." (*Id.* at ¶¶ 29, 29 n.1, 112.)

The basketball camp took place at Hobbs High School from 9:00 a.m. through 5:00 p.m., Monday through Friday, during the entire month of July 2013. (*Id.* at ¶ 30.) The camp provided lunch to the children each day, and Plaintiff Doe's parents expected her to remain on campus the

entire day, including the lunch period. (*Id.* at ¶¶ 32–33.) On multiple occasions throughout the basketball camp, however, Defendant White lured Plaintiff Doe away from campus during lunch and sexually assaulted her. (*Id.* at ¶ 34–35.) A Sexual Assault Nurse Examiner (SANE) Nurse performed an examination on Plaintiff Doe on November 19, 2013. (*Id.* at ¶ 36.) Plaintiff Doe reported that Defendant White touched "her vagina, her butt, and [tried] to kiss her and put his hand down her pants." (*Id.*) Plaintiff Doe also confirmed that Defendant White sexually penetrated her "several times." (*Id.*)

Plaintiffs allege that each time Defendant White lured Plaintiff Doe off campus, he did so in front of multiple coaches and/or employees of Defendants City and HMSD. (*Id.* at ¶ 37.) Several days into camp, the HMSD Head Basketball Coach and Summer Camp Director, Defendant Smith, asked Plaintiff Doe's mother, Plaintiff Dorothy Rall, if it was ok that Plaintiff Doe was leaving campus with Zachary White. (*Id.* at ¶ 38.) She replied, "[a]bsolutely not!" (*Id.*) Plaintiffs contend that they put "Defendants on notice of the need to closely monitor" Plaintiff Doe, Defendants "promised such monitoring would be provided" but failed to follow through on their duty. (*Id.* at ¶ 55.) Defendant White continued to take Plaintiff Doe away from campus during the lunch hour. (*Id.* at ¶¶ 39–41, 47.) Plaintiffs allege that multiple coaches and/or employees of the City and HMSD were aware that Defendant White and Plaintiff Doe left campus together, both before and after Plaintiff Dorothy Rall informed them that Plaintiff Doe did not have permission to leave with Defendant White, yet they did nothing to investigate or protect Plaintiff Doe. (*Id.* at ¶¶ 43, 47.)

Plaintiffs contend that Defendants City and HMSD failed to appropriately screen potential employees during the hiring process, to provide appropriate supervision to staff and volunteers, to train staff and volunteers (e.g., regarding child sexual abuse and on when staff and children are allowed to be alone together), and to teach children what to do if they ever felt unsafe. (*Id.* at ¶¶

4

44, 48.) Plaintiffs also assert that "[i]t has always been the Defendants' custom and practice to simply hire anyone that had basketball knowledge[,]" and to take "absolutely no precautionary measures . . . to protect the children from abuse." (*Id.* at ¶ 49.) Plaintiffs further assert that while Defendants City and HMSD have policies and procedures in place to prevent and remedy harassment and violence, the Defendants took no action to protect Plaintiff Doe. (*Id.* at ¶¶ 53–54.)

## III.   Legal Standards

### A.   Motion to Dismiss Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.)

### B.   Law Regarding Qualified Immunity

The qualified immunity defense "protects law enforcement officials who are required to exercise their discretion by shielding them from liability for harm caused by reasonable mistakes." *G.M. ex rel. B.M. v. Casalduc*, 982 F. Supp. 2d 1235, 1241 (D.N.M. 2013) (citing *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009)). Qualified immunity "provides ample

5

protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity grants such officials "an entitlement not to stand trial or face the other burdens of litigation . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (internal citation omitted)) (alteration in original). "Whether a right is 'clearly established' is an objective test: 'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (internal citation omitted)). "If the plaintiff cannot meet either part of this burden, the defendant is entitled to qualified immunity." *Castillo v. Day*, 790 F.3d 1013, 1019 (10th Cir. 2015) (citing *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1199 (10th Cir. 2009)). The Court may address either prong of the two-step analysis first. *Brown*, 662 F.3d at 1164 (citation omitted).

## IV.   Discussion

Plaintiffs allege eight counts against a variety of Defendants. (*See* SAC.) Neither their complaints nor their responses to Defendants' motions to dismiss offer full clarity or define with precision what causes of action they intend to bring. Too often, their allegations are vague or conclusory, leaving the Court guessing at exactly how the facts allegedly support their claims for relief. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual  allegation'" (alteration in original))). Most importantly, Plaintiffs "often fail[] to clearly identify which defendant(s) did what, making [their] vague allegations all the more difficult to follow." *Scott v. City of Albuquerque*, 2014-CV-665, at 3 (D.N.M. Aug. 17, 2015) (citing *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)). The Court presents Plaintiffs' claims below as understood using all of the pleadings and arguments Plaintiffs presented, in the same order as the counts in the Second Amended Complaint.

### A.    Background on § 1983 Suits and Forms of Liability

Before the Court addresses the merits of Plaintiffs' complaint, it finds it helpful to review the differences between the types of suits plaintiffs may bring, and the forms of liability plaintiffs may impose on defendants in a § 1983 suit. "Title 42 U.S.C. § 1983 provides in part that '[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'" *Brown*, 662 F.3d at 1163 (quoting 42 U.S.C. § 1983).

### 1.    Official-capacity vs. personal-capacity suits

Suits against a defendant in an official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citation omitted)). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* (citing *Graham*, 473 U.S. at 166 (internal citation omitted)). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the

entity's "policy or custom" must have played a part in the violation of federal law.'" *Id.* (quoting *Graham*, 473 U.S. at 166 (internal citations omitted)). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity . . . may possess, such as the Eleventh Amendment." *Graham*, 473 U.S. at 167.

Suits against a defendant in a personal (or individual) capacity, "on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. "[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Graham*, 473 U.S. at 166 (internal citation omitted)). "While the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert 'personal immunity defenses, such as objectively reasonable reliance on existing law.'" *Id.* (quoting *Graham*, 473 U.S. at 166–67 (internal citations omitted)).

### 2.    Personal-capacity suits: personal liability vs. supervisory liability

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown*, 662 F.3d at 1163. "Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'" *Id.* (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (internal citation omitted)). "Supervisory liability 'allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution . . . .'" *Id.* at 1163–64 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (internal citation omitted)). Because § "1983 does not authorize liability under a theory of respondeat superior[,]" *id.* at 1164 (citing *Monell v. Dep't of*

8

*Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978)), a plaintiff must demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* (quoting *Dodds*, 614 F.3d at 1199 (internal citation omitted)). To put it simply, "[p]ersonal liability under § 1983 must be based on [a defendant's] personal involvement" in a constitutional violation, "and supervisory liability must be based on [the defendant's p]olicy." *Id.* at 1164–65. Defendants sued in a personal capacity are protected by qualified immunity regardless of whether the plaintiff seeks to impose personal or supervisory liability. *See id.* at 1166.

### B.    Count I—Substantive Due Process and Equal Protection Claims

Plaintiffs' Second Amended Complaint and the briefs on Defendants' motions to dismiss present a morass of claims and legal theories under Count I. It appears that Plaintiffs seek to bring claims for municipal, supervisory, and individual liability against various Defendants for a substantive due process violation, as well as claims for individual and/or municipal liability for a violation of Plaintiff Doe's equal protection rights. (SAC ¶¶ 57–74.) The substantive due process claims arise from an assortment of alleged conduct: sexual assault by Defendant White; a failure to screen potential employees/volunteers by Defendants City, HMSD, Murphy, and Reeves; a failure to train and supervise employees/volunteers by Defendants City, HMSD, Murphy, Reeves, and Smith; and a failure to protect Plaintiff Doe, to investigate, or to take precautionary measures to prevent the sexual assault by Defendants Reeves and Smith. (*Id.*) The Court will examine each of these claims below.

Plaintiffs also bring a wide variety of allegations against unspecified Defendants (e.g., "the individual Defendants, and each of them" or "other city/school officials"). (SAC ¶¶ 62, 64–72,

74.) The Tenth Circuit has held that "in a § 1983 action it is 'particularly important' that 'the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'" *Brown*, 662 F.3d at 1163 (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (internal citation omitted)). Plaintiffs' allegations are insufficient to state claims against "individual Defendants" or "other city/school officials," where Plaintiffs fail to specify Defendants and the conduct attributed to them. *See Pahls*, 718 F.3d at 1225 ("Because § 1983" imposes "personal liability on government officials," the Tenth Circuit has "stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants.")). At the outset, the Court finds that all substantive due process and equal protection claims against any Defendants not specifically named in the Court's analysis below are hereby dismissed for failure to state a claim.

>    1. **Plaintiffs have pled sufficient facts to demonstrate that Defendant White is a state actor and liable for a § 1983 violation.[3]**

Plaintiffs allege that Defendant White's conduct in sexually abusing Plaintiff Doe deprived her of her substantive due process rights. (SAC ¶¶ 58–60.) To maintain a § 1983 claim against Defendant White, Plaintiffs must allege sufficient facts to demonstrate that Defendant White acted "under color of state law." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (quoting 42 U.S.C. § 1983); (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.") (internal citation omitted); *Owen*

---

[3] While Defendant White did not join in this motion to dismiss, Defendants have raised the issue of whether Plaintiff pled sufficient facts to show White was a state actor, as the outcome of the question affects other issues. (*See* Docs. 31 at 19–20; 32 at 10–11.)

*v. City of Independence, Mo.*, 445 U.S. 622, 650 (1980) ("§ 1983 was designed 'to provide protection to those persons wronged by the [m]isuse of power") (internal citation omitted)). Plaintiffs must show that Defendant White "represent[ed the state] in some capacity, whether [he] act[ed] in accordance with [his] authority or misuse[d] it." *Id.* (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (internal citations omitted)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 492–93 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted)). This may be actual or apparent authority. *Id.* at 493 (citing *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *cf. Griffin v. Maryland*, 378 U.S. 130, 135 (1964) (holding that a "private security guard who wore a sheriff's badge and identified himself as a deputy sheriff 'purported to exercise the authority of a deputy sheriff,'" was therefore a state actor for purposes of the equal protection clause of the Fourteenth Amendment)). Where, as here, a defendant is alleged to be a public employee, "the Supreme Court has noted 'state employment is generally sufficient to render the defendant a state actor.'" *Id.* at 493 (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 n.18 (1982) (internal citation omitted)). "But at the same time, it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3d Cir. 1995)).

To prove that an employee's action is one "'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." *Id.* (quoting *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cty. Okla.*, 894 F.2d 1176, 1188 (10th Cir. 1990); citing *Barna v. City of Perth*

*Amboy*, 42 F.3d 809, 817 (collecting cases); *Pitchell*, 13 F.3d at 548 (collecting cases)). It is, therefore, "the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494. "What constitutes the required real nexus, however, is not completely clear." *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1291 (D.N.M. 2015). The Tenth Circuit has noted that the existence of a real nexus depends on the factual circumstances of each case: whether a defendant acts under color of law "rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty." *Id.* (quoting *David v. City & Cty. of Denver*, 101 F.3d 1344, 1353 (10th Cir. 1996) (internal citation omitted)). Instead, the court must examine "the nature and circumstances of the [actor's] conduct and the relationship of that conduct to the performance of his official duties." *Id.* (quoting *David*, 101 F.3d at 1353 (internal citation omitted)). "According to the First Circuit, '[t]he key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law.'" *David*, 101 F.3d at 1353 (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (internal citation omitted)). "For the Seventh Circuit, the fundamental question is "whether [the officer's] actions related in some way to the performance of a police duty." *Id.* (quoting *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990) (internal citations omitted)).

In *Jojola*, a school custodian approached a minor student, "led her into a dark, vacant classroom[,]" and molested her. *Jojola*, 55 F.3d at 490. The Tenth Circuit found that plaintiffs had failed to plead a real nexus where the allegations were insufficient to show that the custodian exercised any actual or apparent state authority "in relation to his molestation of" the student. *Id.*

12

at 494. The court noted that "[t]he complaint is devoid of any allegation that [the custodian] enticed [the student] into the classroom through the use or misuse of any state authority he may have possessed." *Id.* The student's attorney, when questioned during an argument on the motion to dismiss, "was unable to articulate to the district court how [the custodian's] conduct could be fairly attributed to the state . . . ." *Id.*

The Tenth Circuit also found that plaintiffs failed to plead a real nexus in *D.T. by M.T.*, 894 F.2d at 1187–88. In that case, a teacher and basketball coach at the defendant school district sexually abused plaintiffs while acting in a capacity as a volunteer doing summertime fundraising for a basketball camp. *Id.* at 1182–83. The Tenth Circuit "focused on the fact that, during the vacation months, the teacher was free of all obligations to the school district." *David*, 101 F.3d at 1353 (citing *D.T. by M.T.*, 894 F.2d at 1187). The court "rejected the argument that the teacher's 'cloak of authority' satisfied the color of law requirement, reasoning that there was no real nexus between the sexual abuse and the public school." *Id.* (citing *D.T. by M.T.*, 894 F.2d at 1188; *Jojola*, 55 F.3d at 493–94).

Whether Defendant White served in any capacity—employee, volunteer, or otherwise—is a disputed fact. Plaintiffs maintain that he was either an employee or a volunteer referee for the camp; Defendants dispute that he served any official function. (*See* SAC ¶¶ 3, 28, 58–59; Doc. 31 at 2, 19–20; Doc. 32 at 3, 10–11.) For purposes of this motion, the Court accepts as true that Defendant White was an employee or volunteer; the issue is whether Plaintiff has pled sufficient facts to show that he used his "badge" of authority to lure her away from camp. *See Jojola*, 55 F.3d at 493–94.

The only allegations regarding Defendant White's alleged use of authority to commit sexual assault on Plaintiff Doe are as follows: Plaintiffs contend that "Defendant White possessed

authority allowed and/or granted to him by the City of Hobbs 2013 Summer Basketball Camp and recognized by the Defendant HMSD to control the movement of students and to detain students[,]" and Plaintiff Doe was under this control. (SAC ¶ 58.) Plaintiffs allege that Defendant White took advantage of his authority (*id.* at ¶ 59) to "lure[] the child away to leave the campus for lunch" on multiple occasions during camp, and "on each occasion [he] sexually assaulted and/or sexually penetrated the child." (*Id.* at ¶¶ 34–35.)

Plaintiffs do themselves no favors on this issue with the lack of specific allegations in their Second Amended Complaint. As Defendants point out, Plaintiffs do not specify exactly *how* Defendant White took advantage of his authority to lure Plaintiff Doe away from campus. (Docs. 31 at 19–20, 32 at 10–11.) Defendants argue that this case is similar to *Jojola*, where the Tenth Circuit found the plaintiff had not sufficiently pled that the custodian defendant used his badge of authority to lure her into a classroom. *See Jojola*, 55 F.3d at 494. The facts here are distinguishable, however. Custodians do not traditionally have the same authority over students that a referee has over athletes. It is also more likely that Defendant White, acting as a referee at a basketball camp, would have closer, more activity-related contact with Plaintiff Doe than a custodian would have with a student in a traditional school setting.

To succeed on this claim at the summary judgment stage, Plaintiffs will need much more specific evidence to prove that Defendant White took advantage of his position to deprive Plaintiff Doe of her constitutional rights. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1305–06 (11th Cir. 2001) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 n.4 (5th Cir. 1994) (finding sufficient nexus where teacher "'took full advantage of his position as [plaintiff's] teacher' to create opportunities for sexual contact, exempt her from doing schoolwork, to give her good grades, and to intervene on her behalf to get her a better grade in another class")). While Plaintiffs'

complaint could be more specific, there are allegations sufficient for the Court to draw the reasonable inference that Defendant White used his authority to lure Plaintiff Doe away from campus, making him a state actor. *See Iqbal*, 556 U.S. at 678 (citation omitted).

### 2.    Plaintiffs have pled sufficient facts to survive Defendants' motions for municipal liability where Defendant White is a state actor.

Neither Defendant City nor HMSD will "be held liable under § 1983 solely because its employees inflicted injury." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citation omitted). "Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an [employee] committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged." *Chavez v. Cty. of Bernalillo*, 3 F. Supp. 3d 936, 980 (D.N.M. 2014) (citing *Graves*, 450 F.3d at 1218). Plaintiffs have demonstrated that Defendant White committed a constitutional violation. Plaintiffs also allege that Defendants City and/or HMSD maintained a "custom and practice" of hiring anyone with basketball knowledge to work the camp without performing the necessary background checks to ensure that they were fit to work with children. (SAC ¶ 48–49.) Once these unscreened staff members were in place, Plaintiffs alleged that Defendants City and/or HMSD failed to provide any training to staff members on sexual abuse or on when staff members were allowed to be alone with students. (*Id.* at 48.) This custom and practice together with the lack of training provides the link between the decision to hire Defendant White without a background check and the injury alleged. *See Chavez*, 3 F. Supp. 3d at 980 (citing *Graves*, 450 F.3d at 1218).

The Tenth Circuit has found that "[a] municipal policy or custom may take" one of several forms. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted). The forms at issue here may include: (i) "an informal custom[,]" that, while not expressly authorized,

"is so permanent and well settled" it "constitute[s] a custom or usage with the force of law;" or (ii) "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Id.* (citations omitted). A city will not be liable for a failure to train or supervise unless the plaintiff can show that the policymakers were "'deliberately indifferent to the need' for further training or supervision." *Bryson*, 627 F.3d at 789 (quoting *City of Canton*, 489 U.S. at 390). Plaintiffs may show a city's deliberate indifference by demonstrating that it had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation." *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)). Normally this is shown "by proving the existence of a pattern of tortious conduct." *Id.* (quoting *Barney*, 143 F.3d at 1307–08). In rare cases, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction . . . ." *Id.* (quoting *Barney*, 143 F.3d at 1307–08).

Plaintiffs have not alleged a pattern of tortious conduct, but this is one of the "narrow set of circumstances" where one incident is enough to show deliberate indifference. *Id.* Where a policy or statute requires background checks on potential employees and volunteers who will work with children, the Court finds Defendants have constructive notice that ignoring the policy is substantially certain to result in harm to a child. These policies are in place for a reason: to maintain a safe environment for children. Where Plaintiffs allege that there was a longstanding practice of hiring people to work at the basketball camp without a background check in contravention of local policy or state statute,[4] and further, that there was no training on sexual abuse or when these

---

[4] Plaintiffs' allege that Defendants City and HMSD maintained policies and procedures to prevent harassment and protect students and citizens. (Doc. 25, Second Am. Compl. (SAC) ¶¶ 53–54.) Presumably, one or both of these policies require the background checks that Defendants City and HMSD allegedly failed to conduct. (*See id.* at ¶ 48–

16

unscreened and potentially unsafe staff members were allowed to be alone with students, such allegations are sufficient at this juncture to show a municipal policy or custom, and the Court will deny Defendants' motions to dismiss on this issue. *See id.*

> **3.    Plaintiffs have not pled sufficient facts to survive Defendants' motions on the claims for supervisory liability.**

Again, Plaintiffs' allegations in the Second Amended Complaint are not a model of clarity, but it appears that they intend to bring a claim for "failure to screen" against Defendants Murphy and Reeves (SAC ¶¶ 9, 14, 27), a claim for "failure to train and supervise" against Defendants Murphy, Reeves, and Smith (*id.* at ¶¶ 10, 13–14, 26, 64–66), and a claim for "failure to protect and investigate" against Defendants Reeves and Smith (*id.* at ¶¶ 38, 41, 61, 64–66, 70). The Court will address each claim separately.

> **a.    Failure to Screen**

Defendants first argue that Plaintiffs have failed to state a claim against any Defendant for supervisory liability, because Plaintiffs failed to include specific instances or facts to support their claim. (Docs. 31 at 16–19, 32 at 8–10.) For example, Defendants City and Murphy point out that the only specific allegations against Defendant Murphy are that he "oversees and approves" the basketball camp; that he is "responsible for the hiring of employees and/or volunteers[,]"; and that he supervises and disciplines employees and volunteers. (SAC ¶¶ 13–14; Doc. 31 at 17.) Defendants argue that because Plaintiffs never specifically allege Mr. Murphy was aware that Defendant White was leaving with or sexually assaulting Plaintiff Doe, the claims against

---

49.) The failure to conduct a background check may also be a violation of state statute. *See* N.M. Stat. Ann. § 22-10A-5 (1978); *see also Meza v. Bd. of Educ. of the Portales Mun. Sch.*, No. CIV. 10-0963-JB/WPL, 2011 WL 1128876, at *18 (D.N.M. Feb. 25, 2011) ("[U]nder state law, [the] Schools' Superintendent and the School Board bear the burden of ensuring that staff who work with children are appropriately qualified and supervised, that staff maintain professional standards, and that staff have passed background checks that include fingerprinting and criminal background checks.").

Defendant Murphy should be dismissed. (Doc. 31 at 16–18.) It is true Plaintiffs have the burden of providing "fair notice of the grounds for the claims made against each of the defendants[,]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008), but the Court may also draw reasonable inferences that Defendant Murphy "is liable for the misconduct alleged[,]" *Iqbal*, 556 U.S. at 678 (citation omitted). When Plaintiffs allege that Defendants City and HMSD failed to screen Defendant White, the Court may reasonably infer that screening employees is a step in the hiring process. Plaintiffs name Defendants Murphy and Reeves as responsible for hiring, and the Court may reasonably infer that they did so in a supervisory capacity. (SAC ¶¶ 9, 14, 27, 48.)

The Tenth Circuit has said that "[w]hile *respondeat superior* imposes liability for public policy reasons upon masters though they are not at fault in any way, direct liability only imposes liability where the plaintiff has shown the supervisor himself 'breached a duty to plaintiff which was the proximate cause of the injury.'" *Dodds*, 614 F.3d at 1195 (quoting *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979)). Therefore, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation . . . ." *Id.* (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (internal citations omitted)). "Personal involvement does not require direct participation because § 1983 states '[a]ny official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.'" *Id.* (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008) (internal citation omitted)). "To impose § 1983 liability" on a supervisor whose subordinate has violated a plaintiff's constitutional rights, the plaintiff "must demonstrate 'an "affirmative link" between the supervisor and the violation . . . .'" *Id.* (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal citations omitted)). The Tenth Circuit has found that the "'affirmative link'

requirement [has] three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id.*

To establish personal involvement, a plaintiff may show the supervisor's "personal participation, his exercise of control or direction, or his failure to supervise," *id.* (quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732 (internal citation omitted)), "or his 'knowledge of the violation and acquiesce[nce] in its continuance.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996) (internal citations omitted)). Alternatively, the plaintiff may demonstrate that the supervisor promulgated, created, implemented, or utilized "a policy that caused a deprivation of plaintiff's rights . . . ." *Id.* (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) ("stating § 1983 liability may be imposed on a supervisor who either 'established or utilized an unconstitutional policy or custom' or 'breached a duty imposed by state or local law which caused the constitutional violation'"); Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses, § 7.19[C] (4th ed. 2010) ("[S]upervisory officials who promulgate[d] policies that [were] enforced by subordinates [were] liable if the enforcement of the policy cause[d] a violation of federally protected rights.")).

To establish the "requisite causal connection[,]" the plaintiff must show "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Dodds*, 614 F.3d at 1195–96 (quoting *Poolaw*, 565 F.3d at 732–33 (internal citations omitted)). "And, finally, the plaintiff also had to show the supervisor had a culpable state of mind, meaning 'the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur.'" *Id.* at 1196 (internal citations omitted). The Tenth Circuit cautions that the three requirements are not "necessarily distinct." *Id.* "Proof of a supervisor's personal direction or knowledge of and acquiescence in a

19

constitutional violation often sufficed to meet the personal involvement, causal connection, and deliberate indifference prongs of the affirmative link requirement for § 1983 supervisory liability." *Id.* (citing *Jenkins*, 81 F.3d at 995) ("concluding a plaintiff may satisfy the requirements for imposing supervisory liability under § 1983 by 'showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance'") (internal citations omitted); *Woodward v. City of Worland*, 977 F.2d 1392, 1399–1400 & n.11 ("implying that personal direction or actual knowledge and acquiescence demonstrates deliberate indifference") (internal citations omitted)).

In *Dodds*, for example, a sheriff, sued in his personal capacity as a supervisor, was responsible for a policy that ultimately caused constitutional injury to the plaintiff when a subordinate enforced the policy. *Id.* at 1203. In finding that the sheriff was personally involved in the constitutional violation, the Tenth Circuit noted it was important that the sheriff did not simply passively enforce policy, he actively maintained it as the final policymaker. *Id.* at 1203–04. Here, Plaintiffs contend that Defendants' failure to screen potential employees and volunteers, purportedly in adherence to a custom of "hiring anyone with basketball knowledge" and in violation of City and/or District policy, ultimately caused the deprivation of Plaintiff Doe's constitutional rights. (SAC ¶¶ 48–49.) Plaintiffs do not allege that either Defendant Murphy or Reeves was responsible for actively maintaining the policy, nor that they knowingly breached any kind of duty imposed by policy or statute. *See Dodds*, 614 F.3d at 1195; *Meade*, 841 F.2d at 1528.

Without allegations that satisfy the personal involvement prong, the Court cannot find that Defendants had the necessary culpable state of mind, nor that there was a causal connection between the Defendants' failure to conduct the background checks and the constitutional violation. *See Dodds*, 614 F.3d at 1195–96. The Court notes that background checks in this context are

required for a legitimate reason: to ensure the safety of children. But that reason by itself is not enough to hold Defendants Murphy and Reeves personally liable in their supervisory capacity for the harm caused to Plaintiff Doe. The allegation that Defendants Murphy and Reeves acquiesced to the hiring of Defendant White or others who had not taken—or passed—background checks, without allegations that they were responsible for maintaining such a custom or policy or knowingly violated a duty, is insufficient to demonstrate deliberate indifference. The Court will grant Defendants' motion to dismiss the failure to screen claim for supervisory liability.

b.      **Failure to Train/Supervise**

Plaintiffs bring a claim for a failure to train and supervise against Defendants Murphy, Reeves, and Smith. (SAC ¶¶ 10, 14, 26, 48, 64–66.) Plaintiffs' only allegation regarding training occurs in paragraph 48 and references Defendants City and HMSD. (*Id.* at ¶ 48.) Plaintiffs never name Defendants Murphy, Reeves, or Smith as responsible for training staff members or otherwise demonstrate they had personal involvement in training; consequently, their claim for failure to train against these Defendants in their supervisory capacity must fail. *See Dodds*, 614 F.3d at 1195–96.

Plaintiffs do make more specific allegations that Defendants Murphy, Reeves, and Smith are responsible for supervising the staff at the basketball camp. (SAC ¶¶ 10, 13–14, 26, 38, 41, 61, 64–66, 70.) As noted above, Plaintiffs need to show that Defendants "set in motion a series of events that [they] knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Dodds*, 614 F.3d at 1195–96 (quoting *Poolaw*, 565 F.3d at 732–33 (internal citations omitted)). Defendants must have also acted "'knowingly or with "deliberate indifference" that a constitutional violation would occur.'" *Id.* at 1196 (quoting *Serna*, 455 F.3d at 1151, 1154) (internal citations omitted). The Court will look at each named Defendant

separately to determine whether Plaintiff has alleged facts sufficient to bring a claim for supervisory liability.

While Defendant Murphy allegedly had knowledge that the camp staff had not undergone background checks, Plaintiffs did not specifically allege that Defendant Murphy was responsible for maintaining such a policy, nor that he knew Defendant White was leaving campus with Plaintiff Doe at lunch. There are insufficient facts, therefore, to show that Defendant Murphy failed to supervise with the requisite "culpable state of mind." *Id.* at 1196 (citation omitted). Similarly, while Defendant Smith had knowledge that Plaintiff Dorothy Rall disapproved of the two leaving campus together, there are no facts alleged to show that Defendant Smith "knew or reasonably should have known" that allowing the two to leave together would cause Defendant White "to deprive [Plaintiff Doe] of her constitutional rights.'" *Id.* at 1195–96 (citations omitted). At most, Defendant Smith's conduct in failing to stop Defendant White from leaving campus with Plaintiff Doe was negligent.

Plaintiffs allege that Defendant Reeves had knowledge that Defendant White had not been properly screened *and* that he was leaving with Plaintiff Doe at lunch. But again, Defendant Reeves was not responsible for maintaining the policy, and the Court cannot find on the facts alleged in Plaintiffs' complaint that Defendant Reeves was personally involved in any constitutional violation. The Court will grant Defendants' motions to dismiss on the failure to supervise claim against Defendants Murphy, Reeves, and Smith.

c.      **Failure to Protect/Investigate**

The analysis on the claim for failure to protect and investigate against Defendants Reeves and Smith is similar to the one for failure to train. There are no facts alleged to show Defendant Smith "knew or reasonably should have known" that failing to investigate or protect Plaintiff Doe

22

would cause Defendant White "to deprive [Plaintiff Doe] of her constitutional rights.'" *Id.* at 1195–96 (citations omitted). Plaintiffs fail to state a claim against Defendant Smith. And because there are insufficient facts to show that Defendant Reeves was personally involved in the constitutional violation, Plaintiffs' claim also fails as to him. The Court will grant Defendants' motions to dismiss for all claims based on supervisory liability.

> **d.**   **Defendants are entitled to qualified immunity for all claims related to supervisory liability where Defendant White is a state actor.**

Defendants seek qualified immunity for Plaintiffs' personal-capacity substantive due process claims for supervisory liability. (Docs. 31 at 18–19; 32 at 20–21.) Plaintiffs have failed to establish that Defendants Murphy, Reeves, and Smith are liable for any claims related to supervisory liability. *See supra* Part IV(B)(3)(a)–(c). Because Plaintiffs have failed to meet the first prong of the qualified immunity analysis, Defendants are entitled to qualified immunity. *Castillo*, 790 F.3d at 1019 (citation omitted).

> **4.**   **In the alternative, Plaintiffs may not maintain any claim for liability for a failure to screen based on the "special relationship" doctrine if Defendant White is not found to be a state actor.**

Plaintiffs' complaint contains several legal theories for their municipal liability claim. The Court's findings *supra* at IV(B)(2)–(3) are based on Plaintiffs' theory that Defendant White was a state actor. Plaintiffs also allege that if Defendant White is not found to be a state actor, Defendants City and HMSD are liable because they had a "special relationship" with Plaintiff Doe, or because they created the danger at issue. (*See* SAC ¶¶ 57–74; Doc. 35 at 9–13; Doc. 36 at 9–10, 13–15.) The Court examines these issues as alternative theories for liability in the event that Defendant White is ultimately not found to have been a state actor.

In general, a state will not be liable for injuries imposed by private actors. *Saenz*, 105 F. Supp. 3d at 1301–02 (citing *Robbins*, 519 F.3d at 1251 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189, 197 (1989))). There are two exceptions to the rule: (1) "the special-relationship doctrine—arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to protect that individual"; *id.* (citations omitted), and (2) "the danger-creation theory—provides that a state may also be liable for an individual's safety 'only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'" *Id.* (quoting *Robbins*, 519 F.3d at 1251 (internal citation omitted)). Under either theory of liability, the state may be liable for injuries caused by a *private actor*; the Court has already found that Defendant White was a *state actor*, and thus the theories are inapplicable. *See Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (Neither the special relationship doctrine nor the danger creation theory apply "when the injury occurs due to the action of another state actor."). Were the Court to find that Plaintiffs had not pled sufficient facts to show that Defendant White was a state actor, Plaintiffs' claim based on the special relationship doctrine would fail.

"A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." *Saenz*, 105 F. Supp. 3d at 1302 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (internal citation omitted)). Plaintiffs contend that Defendants controlled Plaintiff Doe's "freedom, movement and personal privacy," and thus created a special relationship, making them liable for the injuries caused by Defendant White. (SAC ¶ 63.) Defendants did not, however, so restrain Plaintiff Doe's liberties as to create a special relationship. The basketball camp environment is akin to that of school, and the Tenth Circuit has held that "New Mexico State compulsory attendance laws [do not] so restrain a child's personal

24

liberty that the Due Process Clause imposes upon the state an affirmative obligation to protect that child." *Maldonado v. Josey*, 975 F.2d 727, 730, 731 (10th Cir. 1992). Because "no affirmative duty arises[,]" there is no "special relationship" between a school and its students that would impose municipal liability for an injury to a student caused by a private actor. *Id.* at 731, 733. The basketball camp here is no different: the students at camp did not "depend completely on [Defendants] to satisfy their basic human needs"; nor did the Defendants restrain the students' "liberty to such an extent that it render[ed] them unable to care for their own basic needs." *Id.* at 733. Consequently, no special relationship arose between Defendants and Plaintiff Doe, and Defendants' motions to dismiss are granted on this issue.

### 5.     In the alternative, Plaintiffs' claim for municipal liability for a failure to screen based on the "danger creation" theory may remain if Defendant White is not found to be a state actor.

"Under the danger creation theory, state officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *B.T. v. Davis*, 557 F. Supp. 2d 1262, 1276 (D.N.M. 2007) (quoting *Marino v. Mayger*, 118 F. App'x. 393, 401 (10th Cir. 2004) (internal citations omitted)). To sustain a danger creation claim, Plaintiffs must show: (1) Defendants "created the danger or increased [Plaintiff Doe's] vulnerability to the danger in some way;" (2) Plaintiff Doe "was a member of a limited and specifically definable group; (3) [D]efendants' conduct put [Plaintiff Doe] at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) [D]efendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Id.* (quoting *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (internal citations omitted)). "The Tenth Circuit has characterized the danger creation theory as a 'narrow exception' that 'applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability

to, danger from private violence.'" *Id.* (quoting *Moore*, 438 F.3d at 1042 (internal citation omitted)).

For example, the Tenth Circuit found that "State officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm" in *Armijo ex rel. Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1262 (10th Cir. 1998) (internal citations omitted). In that case, the defendants (a principal and school counselor) suspended a special education student (Armijo) who had threatened suicide. *Id.* at 1256–57. In contravention of school policy, the school officials took Armijo home in a distraught, suicidal state, without informing his parents, and where at least one of the officials knew that Armijo had access to firearms. *Id.* at 1257. The Tenth Circuit found that the officials' conduct was reckless and potentially conscience-shocking. *Id.* at 1264.

Here, there are allegations sufficient to show that Defendants City and HMSD increased Plaintiff Doe's vulnerability to the danger of sexual assault by knowingly maintaining a custom or practice where potential employees and volunteers were not screened as required by municipal policy and/or state statute. (SAC ¶¶ 48–49, 53–54.) Plaintiff Doe was one of a limited number of students enrolled in the summer basketball camp. (*Id.* at ¶ 24.) Defendants' conduct put Plaintiff at substantial risk of serious harm, and Defendants had constructive notice that harm was substantially certain to result where there was a custom or practice of violating a policy that required background checks to ensure children's safety. The allegation that there was a custom or practice of failing to conduct background checks shows that Defendants acted recklessly in conscious disregard of the risk of having unsafe adults work with the students in the basketball camp. In this respect, Defendants' behavior is conscience-shocking, and Plaintiffs' legal theory survives. *See Armijo*, 159 F.3d at 1264.

26

6. **In the alternative, Plaintiffs have not pled facts sufficient to maintain claims based on supervisory liability if Defendant White is not found to be a state actor.**

If the Court were to find that Defendant White was not a state actor, Plaintiffs' claims for supervisory liability would fail for the same reasons discussed *supra* in Part IV(B)(3). Plaintiffs have not alleged facts sufficient to show that any Defendant "knew or reasonably should have known" that their conduct would lead to a deprivation of Plaintiff Doe's constitutional rights. *Dodds*, 614 F.3d at 1195–96 (citation omitted). Consequently, the Court will grant Defendants' motions to dismiss on the issue of supervisory liability.

7. **Plaintiffs have not pled sufficient facts to demonstrate that any of the Defendants are personally liable as non-supervisors under § 1983.**

Individual, non-supervisory defendants sued in their personal capacity are liable for their own conduct that violates a plaintiff's clearly established rights. *Brown*, 662 F.3d at 1163 (citation omitted). They may also "be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability." *Saenz*, 105 F. Supp. 3d at 1290 (citing *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) ("The requisite causal connection is satisfied if [Defendants] set in motion a series of events that [Defendants] knew or reasonably should have known would cause others to deprive [Plaintiff Doe] of [her] constitutional rights.") (internal citations omitted)). The Tenth Circuit has directed courts to read § 1983 "against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 1291–92 (quoting *Martinez v. Carson*, 697 F.3d at 1255 (internal citations omitted)). Here, Plaintiffs allege a variety of facts against several individual Defendants in a non-supervisory capacity.

Plaintiffs make several allegations that the Court construes as making a claim for failure to protect or investigate against a variety of Defendants in a personal, non-supervisory capacity. For example, Plaintiffs contend that all Defendants were aware of Defendant White's abuse of Plaintiff Doe but were deliberately indifferent and failed to protect her. (*See* SAC ¶¶ 62, 67, 68, 71–72.) Plaintiffs have not, however, pled any facts that would go to show that Defendants "knew or reasonably should have known" that Defendant White was sexually assaulting Plaintiff Doe. *Saenz*, 105 F. Supp. 3d at 1291 (citations omitted).

Taking as true Plaintiffs' allegations that each and every Defendant knew Defendant White was taking Plaintiff Doe to lunch against Doe's mother's wishes, the Plaintiffs then ask the Court to leap to the conclusion that Defendants must also know, then, that Defendant White had a "propensity to engage in relationships or interactions that involved contact with minor females" and that Defendant White was sexually abusing Plaintiff Doe. (*See* SAC ¶ 68.) The Court is unwilling to make such a leap. Regardless of whether any Defendant was negligent in allowing Plaintiff Doe to leave with Defendant White against Doe's mother's wishes, there are no allegations that would permit the Court to infer that Defendants knew Defendant White was sexually abusing Plaintiff Doe. *See Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1257 (10th Cir. 2007) ("Negligence is not a basis for liability under § 1983 . . . ."). For these reasons, Plaintiffs have not pled sufficient facts to maintain a claim under §1983 for individual, non-supervisory liability against any Defendant.

### 8.    Equal Protection Claims

"The Fourteenth Amendment to the United States Constitution provides that '[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999) (quoting U.S. Const. amend.

XIV § 1). "Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983." *Id.* "It is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause." *Id.* (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (internal citations omitted)).

### a. Plaintiffs have not pled facts sufficient to maintain a claim for a violation of the equal protection clause against Defendants City or HMSD.

To establish that Defendants City and/or HMSD are liable for sexual harassment, Plaintiffs must show that "a state official's discriminatory actions are representative of an official policy or custom of the municipal institution, or are taken by an official with final policy making authority." *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 446–50 (10th Cir. 1995). Such a policy must be some type of "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Id.* (citations omitted). "Absent such an official policy, a municipality may also be held liable if the discriminatory practice is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Id.* (quoting *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal citation omitted)).

Plaintiffs' complaint "fails to reveal any allegation that" either Defendant City or HMSD "engaged in an official policy of deliberate indifference to sexual harassment." *Id.* Nor do the isolated acts of Defendant White's sexual abuse of Plaintiff Doe "demonstrate a custom or policy of [either Defendant] to be deliberately indifferent to sexual harassment as a general matter." *Id.* at 1250 (citing *Monell*, 436 U.S. at 691 & n.56). Nor do Plaintiffs allege that any of the individual Defendants had "'final policymaking authority' . . . for purposes of establishing municipal liability under section 1983 on the basis of a decision specific to a particular situation. *Id.* (citations

omitted). The Court will grant Defendants' motion regarding municipal liability for an equal protection violation.

> **b.      Plaintiffs have not pled facts sufficient to maintain a claim for a violation of the equal protection clause against the individual Defendants.**

"[A] government official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Id.* If Plaintiffs can show that one of the Defendants "*consciously acquiesce[d]* in sexual harassment by" Defendant White, such acquiescence would be sufficient to maintain a claim for an equal protection violation. Again, there are no allegations sufficient to show that any Defendant had knowledge that Plaintiff Doe was being sexually assaulted. *Id.* "'[L]iability under § 1983 must be predicated on a "*deliberate*" deprivation of constitutional rights by the defendant' and not upon mere negligence." *Id.* (quoting *Woodward*, 977 F.2d at 1399 (internal citations omitted)). Plaintiffs' Second Amended Complaint is insufficient to demonstrate that any Defendant deliberately deprived Plaintiff Doe of her constitutional rights. Defendants' motion to dismiss is granted with respect to the claim for an equal protection violation.

## C.    Claims for Negligence, Assault and Battery, and Intentional Infliction of Emotional Distress (Counts II–VIII)

The New Mexico Tort Claims Act (NMTCA) "provides that [a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978." *Trujillo v. Salazar*, No. CIV-04-0689 JB/WDS, 2006 WL 1228827, at *5 (D.N.M. Mar. 1, 2006) (quoting N.M. Stat. Ann. § 41-4-4(A) (1978)). The NMTCA "shields 'governmental entities and public employees from tort liability unless immunity is

specifically waived by' the" NMTCA. *Id.* (quoting *Archibeque v. Moya*, 866 P.2d 344, 346 (N.M. 1993)). "A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed in the NMTCA." *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1193 (D.N.M. 2013) (citing *Begay v. New Mexico*, 723 P.2d 252, 256 (N.M. Ct. App. 1985) ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act.") (internal citation omitted), *rev'd on other grounds by Smialek v. Begay*, 721 P.2d 1306 (N.M. 1986)).

### 1.    Count II—Negligence against All Defendants

In Count II, Plaintiffs contend that all Defendants "had a duty to exercise due care to protect Plaintiff from harassment and other misconduct by other Defendants." (SAC ¶ 77.) Plaintiffs allege that by failing to investigate, take precautions to prevent such crimes, report crimes, or otherwise protect Plaintiff Doe, Defendants were negligent. (*Id.* at ¶¶ 77–79, 81–82.) Plaintiffs specifically allege that Defendants City and HMSD owed Plaintiff Doe and the other students a duty of care to ensure their safety and well-being. (*Id.* at ¶ 77.) Plaintiffs contend that immunity for negligence has been waived under § 41-4-5. (*Id.* at ¶ 82.) Plaintiffs are incorrect. Section 41-4-5 waives immunity for injury, death, or damage "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft."

The more likely exception for Plaintiffs' negligence claims is found in § 41-4-6, which exempts from immunity "liability for damages resulting from bodily injury . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building . . . ." "This exception balances the principle that 'government should not have the duty to do everything that might be done,' with the desire 'to compensate those injured

by the negligence of public employees and to impose duties of reasonable care.'" *Hunt*, 951 F. Supp. 2d at 1193 (quoting *Cobos v. Doña Ana Cty. Hous. Auth.*, 970 P.2d 1143, 1145 (N.M. 1998) (internal citation omitted)). "To resolve the tension between these two goals, § 41-4-6 'grant[s] governmental entities and employees a general immunity from tort liability . . . [and] waive[s] that immunity in certain defined circumstances.'" *Id.* (quoting *Cobos*, 970 P.2d at 1145).

"The Supreme Court of New Mexico has explained that 'the liability envisioned by [§ 41-4-6] is not limited to claims caused by injuries occurring on or off certain "premises," as the words "machinery" and "equipment" reveal.'" *Id.* (quoting *Cobos*, 970 P.2d at 1146). Rather, § "41-4-6 'contemplates waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government.'" *Id.* (quoting *Bober v. N.M. State Fair*, 808 P.2d 614, 623 (N.M. 1991) (internal citation omitted) (alteration in original)). For example, the Supreme Court of New Mexico has found that plaintiffs could maintain a claim for negligence under § 41-4-6 where a defendant city failed to ensure that lifeguards at a public swimming pool were "present and acting as such . . . [as] required by statute." *Leithead v. City of Santa Fe*, 940 P.2d 459, 463 (N.M. Ct. App. 1997) (citing *Seal v. Carlsbad Indep. Sch. Dist.*, 860 P.2d 743, 746 (N.M. 1993) (italics omitted); *Espinoza v. Town of Taos*, 905 P.2d 718, 722 (N.M. 1995)). The court found that "the school district had been negligent in failing to prevent hazardous conditions[,] . . . which affect[ed] the swimming public at large" *Id.* (citing *Seal*, 860 P.2d at 748). The court in *Leithead* also allowed a claim under § 41-4-6 when "a young girl nearly drowned at a public swimming pool . . . when an inadequate number of capable lifeguards were on duty." *Upton v. Clovis Mun. Sch. Dist.*, 141 P.3d 1259, 1262 (N.M. 2006) (citing *Leithead*, 940 P.2d at 463). The court "held that negligent

32

implementation of safety protocols created a dangerous condition arising from 'operation' of the facility within the meaning of Section 41-4-6." *Id.* (citing *Leithead*, 940 P.2d at 463).

"For the waiver to apply, the negligent operation or maintenance must create a dangerous condition that threatens the general public or a class of building users, and must not just be a claim of negligent supervision . . . ." *Hunt*, 951 F. Supp. 2d at 1194 (citation omitted). "The Supreme Court of New Mexico has held that a school district's 'failure to follow safety policies in place for all at-risk students appears to fall comfortably within the Section 41-4-6 waiver for "operation or maintenance" of a public building.'" *Id.* (quoting *Upton*, 141 P.3d at 1262). In *Upton*, a student "collapsed and died from an asthma attack after a substitute physical education teacher required her to continue exercising" despite the fact that her parents had given the school written and verbal notice about the student's condition. *Id.* (citing *Upton*, 141 P.3d at 1260). The court noted that "[i]f the only alleged misconduct . . . had been the substitute P.E. teacher failing to watch her while she participated in physical exercise, the Upton's claim . . . would be" one for negligent supervision and, therefore, inadequate to trigger liability under § 41-4-6. *Id.* (quoting *Upton*, 141 P.3d at 1264). "It found, however, that the school's conduct went beyond negligent supervision, because: (i) the school ignored information that the plaintiffs provided them; (ii) the school failed to warn the substitute teacher about the student's condition; and (iii) the school failed to follow through with the proper emergency procedures." *Id.* (citing *Upton*, 141 P.3d at 1264). "These actions and omissions combined to create the dangerous conditions, placing [the student] in a far worse position than reasonable and expected risks of [school] life." *Id.* (quoting *Upton*, 141 P.3d at 1264).

The Court finds that the facts here are in line with the cases holding that municipalities can be liable under §41-4-6 for creating dangerous conditions at facilities. Plaintiffs contend that Defendants City and HMSD failed to screen potential employees and volunteers in violation of

33

policy and/or statute, thereby creating a dangerous environment for "a class of building users"—students using the municipal facilities during summer basketball camp. *Hunt*, 951 F. Supp. 2d at 1194 (citation omitted). Defendants City and/or HMSD allegedly failed to follow established procedures to keep students safe. *Upton*, 141 P.3d at 1262. And not only did Defendants City and HMSD know they had created a potentially dangerous environment for the students, but when one of their staff members received notice that an unscreened staff person was taking a student off-campus against her parents' wishes, Defendants did nothing to intervene. "Just as schools generally have safety procedures in place for various kinds of emergencies, a school simply cannot operate in a safe, reasonable, and prudent manner without affording, at the very least, the health and safety services that students have been promised, and upon which parents have relied." *Id.*

The Court takes care to distinguish the decision here from a line of cases that exclude from the waiver damages due to negligent performance of administrative functions. For example, the New Mexico Supreme Court held in *Archibeque v. Moya* "that  one employee's negligent performance of an administrative function, putting at risk a single individual, did not fall under the waiver of immunity" in § 41-4-6. *Id.* at 1263 (citing 866 P.2d at 347). In *Archibeque*, an inmate was transferred to a prison in Santa Fe. 866 P.2d at 346. As part of his intake, an officer asked Archibeque if he had any enemies at the prison. *Id.* Archibeque told the officer he did have one enemy (Gallegos) at the prison; the officer mistakenly told him that Gallegos was no longer there and released Archibeque into the general prison population. *Id.* That night, Gallegos assaulted Archibeque. *Id.* In finding that Archibeque's claim was not cognizable as one for negligent operation of the prison, the court paid particular attention to the fact that "classif[ying] Archibeque as an inmate that could be released into the general prison population . . . was . . . an administrative function associated with the operation of the corrections system." *Id.* at 346–47. Such

34

administrative functions fall outside of the language of § 41-4-6, which waives immunity for negligence in "operating and maintaining the . . . physical premises." *Tafoya v. Bobroff*, 865 F. Supp. 742, 745 (D.N.M. 1994) (citing *Archibeque*, 866 P.2d at 347). Other administrative functions that fall outside the waiver include: "[d]etermining the location of a facility[,]" *Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK)*, 805 F. Supp. 2d 1145, 1184 (D.N.M. 2011); requiring interviewees to perform a physical agility test, *Tafoya*, 865 F. Supp. at 746; and "calculating the length of [a] term of incarceration," *Herrera v. Dorman*, No. CIV. 13-1176 MV/SCY, 2014 WL 7653393, at *7 (D.N.M. Aug. 5, 2014).

"In declining to equate" the finding in *Archibeque* "with negligent operation of a building under Section 41-4-6, Chief Justice Ransom noted the difference between cases involving only a 'discrete administrative decision' that did not make the premises any more dangerous beyond 'the reasonable and expected risks of prison life,' and the cases demonstrating 'a general condition of unreasonable risk from negligent security practices,' for which the [NM]TCA does waive immunity." *Upton*, 141 P.3d at 1264 (quoting *Archibeque*, 866 P.2d at 350 (Ransom, J., specially concurring)). Where, as here, public employees negligently failed to screen potential employees and volunteers in violation of policy and/or statute, resulting in "a general condition of unreasonable risk" for the minors participating in basketball camp, the Court finds that immunity has been waived under § 41-4-6. *Archibeque*, 866 P.2d at 350 (Ransom, J., specially concurring). Plaintiffs' claim survives as to Defendants City and HMSD, the only two Defendants specifically named in Count II. Defendants' motions to dismiss are granted with respect to all other Defendants on this claim.

### 2.     Count III—Negligence: Failure to Warn against Defendant City of Hobbs

Plaintiffs allege that "Defendant City had knowledge of White's previous behavior and his propensity for violent/antisocial behavior" and had a duty to warn Defendant HMSD and others about the danger. (SAC ¶¶ 84–87.) The Court assumes this is an alternative theory of liability in the event there is evidence that Defendants did screen Defendant White in advance and allowed him to work even with his felony conviction. The New Mexico Court of Appeals has held that immunity is waived under § 41-4-6 where a prison was "negligent in allowing . . . known and dangerous gang members loose to victimize the general prison population . . . ." *Callaway v. N.M. Dep't of Corr.*, 875 P.2d 393, 399 (N.M. Ct. App. 1994). The court found it important to note that the gang members had "a known propensity for violence . . . [and] created a dangerous condition on the premises . . . [that was] foreseeable." *Id.* (citation omitted). Similarly, if Defendant City did indeed know that Defendant White had a felony drug conviction, allowing White to work unsupervised with children created an unsafe condition on the premises that would justify the waiver of immunity under § 41-4-6. The Court will deny Defendant City's motion to dismiss on Count III.

### 3.     Count IV—Failure to Report against Defendant Reeves

In Count IV, Plaintiffs contend Defendant Reeves knew that Defendant White was sexually assaulting Plaintiff Doe and failed to report such abuse. (SAC ¶¶ 91–95.) The factual allegations in Plaintiffs' complaint do not support such a claim. Nowhere do Plaintiffs allege that any Defendant had actual or constructive notice that Defendant White was sexually assaulting Plaintiff Doe. In fact, Defendant Smith is the only person who Plaintiffs allege had any notice that the two were leaving together. (*Id.* at ¶ 38.) Moreover, Plaintiffs offer no authority for their contention that

immunity is waived under the NMTCA for a "failure to report" claim. Defendant HMSD's motion to dismiss is granted with respect to Count IV.

### 4.    Count V—Failure to Train and Supervise against Defendants City of Hobbs and HMSD

In Count V, Plaintiffs allege that Defendants City and HMSD failed to train and supervise Defendants Reeves and White. (*Id.* at ¶ 99.) It is unclear whether this claim is one brought under § 1983 or the NMTCA. If it is brought under § 1983, it is duplicative of Count I, and the Court addressed municipal liability for failure to train and supervise *supra* in Part IV(B)(2).

To the extent the claim is brought under the NMTCA, "New Mexico courts have found that the waiver of immunity in § 41-4-6 does not extend to negligent supervision" standing alone. *Hunt*, 951 F. Supp. 2d at 1193–94 (citing *Pemberton v. Cordova*, 734 P.2d 254, 256 (N.M. Ct. App. 1987) ("For the waiver to apply, the negligent operation or maintenance must create a dangerous condition that threatens the general public or a class of building users, and must not just be a claim of negligent supervision . . . .") (citation omitted)). The Court has already found that Plaintiffs' negligence claim in Count II survives, and Plaintiffs point to no authority that the remaining allegations in Count V properly make out a separate claim. Defendants' motions to dismiss are granted as to Count V.

### 5.    Count VI—Negligent Hiring Against Defendants City of Hobbs and HMSD

Plaintiffs allege that Defendants City and HMSD were negligent in hiring a convicted felon. (SAC ¶¶ 108–13.) Again, this count is duplicative of that in Count III. Moreover, Plaintiffs point to no authority to support their claim that immunity is waived for a claim of negligent hiring standing alone. In fact, the New Mexico Court of Appeals held that immunity had not been waived for claims of negligence in hiring and supervising. *Henry v. Myers*, No. 29,036, 2009 WL 6763578,

at *2 (N.M. Ct. App. Feb. 26, 2009) (citing *Espinoza*, 905 P.2d at 722; *Upton*, 141 P.3d at 1263.) The Court will grant Defendants' motions to dismiss with respect to Count VI.

**6.     Count VII—Assault and Battery against Defendant White and against Defendants City of Hobbs and HMSD under the Doctrine of Respondeat Superior**

Plaintiffs contend that Defendants City and HMSD are liable for assault and battery under the doctrine of respondeat superior. (SAC ¶ 117.) The Court disagrees. "[T]he NMTCA has not waived immunity for assault and battery for the Defendants." *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1134 (D.N.M. 2011). In *Gerald*, a football coach allegedly punched and choked the plaintiff. *Id.* at 1084. The Court noted that the NMTCA "expressly allows assault and battery claims against law enforcement officers[,]" under § 41-4-12, but there is no mention of these intentional torts in the waivers found in §§ 41-4-5 to -12. *Id.* at 1135. If the NMTCA has not waived immunity for assault and battery claims against public officials, then there is no authority for allowing a claim under the theory of respondeat superior. The Court will grant Defendants' motions to dismiss with respect to Count VII.

**7.     Count VIII—Intentional Infliction of Emotional Distress against All "Individual" Defendants and against Defendants City of Hobbs and HMSD under the Doctrine of Respondeat Superior**

Finally, Plaintiffs contend that all "Defendants engaged in a course of conduct designed to cause" Plaintiff Doe emotional distress. (SAC ¶ 121.) Plaintiffs allege that all Defendants are liable for damages due to intentional infliction of emotional distress, and that Defendants City and HMSD are liable under the doctrine of respondeat superior. (*Id.* at ¶¶ 122–23.) Again, the Court disagrees. "Plaintiffs do not point to a waiver of immunity for their . . . intentional infliction of emotional distress claim[,]" nor can the Court find authority for such a waiver. *Salazar v. San Juan*

*Cty. Det. Ctr.*, No. CV 15-0417 JB/LF, 2016 WL 335447, at *48 (D.N.M. Jan. 15, 2016). Defendants' motions to dismiss are granted with respect to Count VIII.

### D.    Claims against Defendants in Their Official Capacities

Defendants move to dismiss the claims against Defendants Murphy, Parks, Reeves, and Smith in an official capacity as duplicative of the claims against Defendants City and HMSD. (Docs. 31 at 15, 32 at 8.) Because suits against a defendant in an official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent[,]" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citation omitted)), the Court will grant Defendants' motions and dismiss the claims against Defendants Murphy, Parks, Reeves, and Smith in an official capacity. Because no claims against these Defendants remain in their individual or supervisory capacities, the Court will dismiss them from the suit entirely.

### E.    Claims for Punitive Damages

In their Prayer for Relief, Plaintiffs request punitive damages against Defendant HMSD on the federal claims brought under § 1983. (SAC Prayer for Relief ¶ 2.) Defendants contend "that punitive damages are not recoverable against public entities in Section 1983 litigation." (Doc. 32 at 24 (citations omitted).) Defendants are correct. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *Miller v. City of Mission, Kan.*, 705 F.2d 368, 377 (10th Cir. 1983) (quoting *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Plaintiffs' claim for punitive damages against Defendant HMSD is hereby dismissed.

## V.    Conclusion

Defendants' motions to dismiss will be granted in part as follows:

Count I: Plaintiffs have pled sufficient facts to state a claim for municipal liability for a substantive due process violation where Defendant White was a state actor, or in the alternative, under a danger-creation theory where Defendant White was not a state actor. Defendants' motions are denied with respect to the issue of municipal liability on these two legal theories. Defendants' motions are granted with respect to the issue of municipal liability under the special relationship doctrine.

Plaintiffs have not pled facts sufficient to maintain claims for supervisory or individual liability for a substantive due process violation (for all Defendants other than Defendant White), and Defendants' motions to dismiss are granted on these claims.

Plaintiffs have not pled facts sufficient to maintain claims for an equal protection violation, and Defendants' motions to dismiss are granted on these claims.

Count II: Plaintiffs have pled facts sufficient to maintain a claim for negligence against Defendants City and HMSD, and immunity has been waived under § 41-4-6 of the NMTCA. Defendants' motions are denied as to Count II as to Defendants City and HMSD and granted as to the remaining Defendants.

Counts III: Plaintiffs have pled facts sufficient to maintain a claim for negligence, and immunity has been waived under § 41-4-6 of the NMTCA. Defendants' motions are denied as to Count III.

Counts IV–VIII: Plaintiffs have not pled facts sufficient to maintain their claims for Failure to Report, Failure to Train and Supervise, Negligent Hiring, Assault and Battery, or Intentional Infliction of Emotional Distress. Defendants' motions are granted with respect to Counts IV–VIII.

Official Capacity Claims: The Court will grant Defendants' motions and dismiss the claims against Defendants Murphy, Parks, Reeves, and Smith in an official capacity. Because no claims

against these Defendants remain in their individual or supervisory capacities, the Court will dismiss them from the suit entirely.

Punitive Damages Claims: Defendant HMSD's motion is granted with respect to Plaintiffs' claims for punitive damages on the claims under § 1983.

**THEREFORE,**

**IT IS ORDERED** that Defendants City of Hobbs Board of Commissioners and John Joseph Murphy's Motion to Dismiss Plaintiffs' Second Amended Complaint, and for Qualified Immunity (Doc. 31) is **GRANTED** with respect to Plaintiffs' claim for municipal liability under a special relationship doctrine, as well as all claims for supervisory and individual liability (other than individual liability for Defendant White) under Count I, as to all Defendants other than Defendant City for negligence under Count II, for claims against Defendant Murphy in an official capacity, and for all claims under Counts V–VIII.

**IT IS FURTHER ORDERED** that Defendants Hobbs Municipal School District, TJ Parks, Shelby Reeves and Mike Smith's Motion and Memorandum to Dismiss Plaintiffs' Second Amended Complaint and for Qualified Immunity (Doc. 32) is **GRANTED** with respect to Plaintiffs' claim for municipal liability under a special relationship doctrine, as well as all claims for supervisory and individual liability (other than individual liability for Defendant White) under Count I, as to all Defendants other than Defendant HMSD for negligence under Count II, for all claims under Counts IV–VIII, for claims against Defendants Parks, Reeves, and Smith in an official capacity, and for Plaintiffs' claims for punitive damages against Defendant HMSD on Count I.

41

**IT IS FURTHER ORDERED** that because no claims remain against Defendants Murphy, Parks, Reeves, and Smith in their official, individual, and/or supervisory capacities, they are hereby dismissed from the suit.

**IT IS FURTHER ORDERED** that Defendants' motions are **OTHERWISE DENIED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**